UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MICHAEL WEADE,**

      Plaintiff,

v.                                             Case No. 8:11-cv-896-T-TBM

**THE SCHOOL BOARD OF HILLSBOROUGH
COUNTY, FLORIDA,**

      Defendant.
_____/

## ORDER

THIS MATTER is before the court on **Defendant's Motion for Summary Judgment** (Doc. 8) and Plaintiff's response in opposition (Doc. 13).[1]  For the reasons that follow, the motion is granted.

I.

A.

This case arises from a single-count Complaint initiated by the Plaintiff, Michael Weade, against the Defendant, The School Board of Hillsborough County, Florida, for alleged violation of the Family and Medical Leave Act (FMLA). (Doc. 2). The lawsuit, filed by Plaintiff in state court, was removed by Defendant to this Court.  By his Complaint, Plaintiff alleges that he was employed by Defendant as a classroom teacher in October 2005. Plaintiff was diagnosed with prostate cancer in November 2007 which necessitated his taking a

---

[1]Additionally, Defendant has filed Plaintiff's interrogatory responses, Plaintiff's deposition, and the Affidavit of Rebecca Kaskeski. *See* (Docs. 8-2, 9, 10).

medical leave of absence.  During this same time, Plaintiff was required to complete his certification to have his teaching contract renewed.  Plaintiff returned to work in April 2008 and began taking the certification exams in May 2008.  Because Plaintiff did not pass all the exams required for certification prior to June 5, 2008, Plaintiff was terminated.  Plaintiff alleges he suffered a serious health condition of which Defendant had knowledge and was subjected to an adverse employment action when Defendant terminated him.  Plaintiff asserts that Defendant wilfully interfered with his rights under the FMLA and/or wilfully retaliated against him for exercising his rights under the FMLA.  (Doc. 2).

B.

By its motion for summary judgment, Defendant initially asserts that Plaintiff fails to demonstrate proof that it interfered with his FMLA rights. In support, it contends that the undisputed facts show that Plaintiff was granted all leave requested without question or criticism.  Upon his return from leave, he was reinstated to his teaching position at the same pay and benefits.  In short, it maintains that Plaintiff cannot demonstrate any adverse action interfering with or contrary to his FMLA rights. On the claim of retaliation, Defendant asserts that Plaintiff cannot demonstrate a causal connection between his use of FMLA leave and his termination.  Here, the evidence supports that Plaintiff was terminated for failing to timely complete all the requirements for his teaching certificate which left him ineligible to teach within the State of Florida.  Even if Plaintiff could establish a prima facie case of retaliation, Plaintiff cannot demonstrate that Defendant's legitimate, non-discriminatory reason for

termination was a pretext for retaliation. In sum, Defendant urges the court grant its motion and enter summary judgment in its favor. (Doc. 8).

In response, Plaintiff "concedes that the interference theory does not apply to his case." (Doc. 13 at 3 n.1). As for the FMLA retaliation claim, he argues the evidence establishes a prima facie case. Thus, he availed himself of rights protected under the FMLA, that is, FMLA leave in connection with prostate cancer; he suffered an adverse employment action, that is, termination less than one month after taking leave; and there is a causal connection between the two actions. While he admits that there was a deadline for the completion of his testing requirements, he urges such could have and should have been extended given his medical circumstances. He suggests that the Defendant advanced the deadline for completion from June 30, 2008, to June 5, 2008. On the question of pretext, he essentially repeats his complaint that Defendant had a procedure in place which would allow for an extension and his extreme and extraordinary circumstances would justify an extension, yet he was forced to take the required tests by the arbitrary deadline of June 5, 2008. (Doc. 13).

## II.

### A.

Summary judgment or partial summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the pleadings,

depositions, and/or other evidence that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to designate specific facts, beyond mere allegations, demonstrating a genuine issue of material fact to avoid summary judgment. *Celotex Corp.*, 477 U.S. at 324; *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994); *Perkins v. Sch. Bd. of Pinellas County*, 902 F. Supp. 1503, 1505 (M.D. Fla. 1995).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. *Hairston*, 9 F.3d at 921; *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

B.

The FMLA, 29 U.S.C. §§ 2601 et seq., creates a private right of action to seek equitable relief and money damages against any employer if the employer interferes with, restrains, or denies the exercise of FMLA rights. *Nev. Dep't of Human Res. v. Hibbs*, 538

U.S. 721, 724-25 (2003). Under the FMLA, employees are entitled to "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," and the right following leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1).

The Eleventh Circuit has recognized two types of claims that may be brought under the FMLA: (1) an interference claim, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) a retaliation claim, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001)); *see Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003); *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000); 29 U.S.C. §§ 2615(a)(1) & (2); 29 C.F.R. § 825.220(c). Plaintiff initially asserted both type claims, but, as noted, has conceded in his response that his interference claim does not apply.

III.

A.

The pertinent facts are undisputed. In October 2005, Plaintiff was hired by Defendant as a Technology Education teacher at Durant High School. Plaintiff did not

5

possess a Florida Professional Educator's Certificate and was hired under a temporary certificate.[2] Thus, on October 21, 2005, Plaintiff signed an Initial Certification - Processing Record (Initial Certification), which was prepared by the Defendant and stipulated that Defendant would request the issuance of a three-year Temporary Certificate from the Department of Education. Such temporary certificates provide teachers with time to complete all of the requirements for the Professional Educator's Certificate while teaching full-time. The Initial Certification listed the requirements which had to be satisfied to obtain the Professional Educator's Certificate and indicated that: "ALL OF THE REQUIREMENTS INDICATED ABOVE MUST BE COMPLETED BY 6/30/08." The requirements to be completed included passing scores on the General Knowledge Test, the Subject Area Exam "Tech. Ed," and the Professional Knowledge Test. Plaintiff acknowledges that he needs a certificate from the State of Florida in order to be able to teach in Florida and that his Temporary Certificate expired June 30, 2008. He further acknowledges that he could have started taking the tests in his first (2005/2006) or second (2006/2007) school year, but he did not. While he had delayed his testing until the last year, it was Plaintiff's belief that he still had plenty of time to complete the requirements had he not become sick.

In November 2007, Plaintiff was diagnosed with prostate cancer. Plaintiff underwent further testing for his cancer in November and December 2007 and surgery was performed February 29, 2008. Plaintiff requested leave from his employment under the FMLA for the

---

[2] In his third year under the temporary teaching certificate, Plaintiff was assigned to Marshall Middle School. Plaintiff testified that he thought this transfer was done outside of the regulations and he brought a grievance. He dropped the grievance when he developed cancer. (Doc. 9 at 27-32).

period from February 29, 2008, through March 29, 2008.  (Doc. 9-5).  He extended his FMLA leave to April 11, 2008.  (Doc. 9-6).  Plaintiff thereafter returned to work but on May 8, 2008, he asked for and received additional FMLA leave through May 22, 2008.  (Doc. 9 at 80).  There is no claim by Plaintiff that Defendant denied any of his leave requests.

At some point in May, Plaintiff received the letter dated May 2, 2008, from Rebecca Kaskeski, Personnel Services Manager for Hillsborough County Public Schools stating, "[y]our teaching certificate expires on June 30, 2008."  Among other matters, the letter advised the Plaintiff, "[i]f you do not provide the required evidence appropriate for your certificate, to your certification representative by 4:00 p.m., June 5, 2008, your eligibility for your current position will expire."  The letter further noted that "[i]f you are unable to fulfill all the requirements to obtain your required teaching certificate, we will transact you into a substitute teacher position for the 2008-2009 school year . . . ."  (Doc. 9-7).  Defendant maintains, and it is not otherwise demonstrated, that this letter was the standard letter employed by the Defendant to advise all teachers whose temporary certificates were expiring on June 30, 2008, and was not unique to Plaintiff.

Plaintiff claims that when he received the May 2nd letter from Rebecca Kaskeski stating he had until June 5, 2008, to provide record evidence appropriate for his certification, he called "downtown" to inquire how he was going to be able to "take these tests in that short amount of time."  (Doc. 9 at 39).  He was told, "that's the requirement."  *Id.*  By his account, he then "called Tallahassee repeatedly, talked to the testing people, found the best tests that [he] could take, and [he] took them."  *Id.* at 43.  He claims that one test, however, was not

available to take until the middle of June because it is scheduled only quarterly, which would have been "after they were going to terminate [him]." *Id.* at 41.[3] In any event, Plaintiff scheduled those tests that were available before June 5, 2008.

While Plaintiff testifies that he took multiple tests on June 4, 2008, in an effort to meet the deadline, documentary evidence suggests that he took the Professional Education Test and the General Knowledge Test on May 30, 2008, and the Technology Education Test on June 4, 2008. Plaintiff received passing scores on the Professional Education Test and three of four sections of the General Knowledge Test.[4] Plaintiff failed the Technology Education Test. (Doc. 9-10 at 2-3). By his account, since he was terminated effective June 5, 2008, per the Kaskeski letter, Plaintiff felt it useless to attempt to take any additional tests to try to complete the testing prior to June 30, 2008. When he retook the Technology Test and the remaining portion of the General Knowledge Test several months later, Plaintiff passed.

Plaintiff thinks he was advised by his principal that he was being terminated. On June 25, 2008, a representative of Defendant's Division of Human Services stated in a letter

---

[3]Plaintiff maintains that the June 5, 2008, deadline imposed by the Defendant was an arbitrary date wrongfully imposed by the Defendant since his teaching certificate did not expire until June 30, 2008. The Defendant urges that it required such matters be submitted by the last day teachers were to be at school, June 5, 2008, and that this requirement was a uniformly-imposed deadline intended to avoid or minimize disruptions with planning and teacher allocation for the following school year. Plaintiff urges that the Defendant could have and should have extended this deadline due to his circumstances, but Defendant claims that it could not. There is an email dated June 6, 2008, in which a certification representative advised someone that the notice of May 2, 2008, indicating Plaintiff was no longer eligible for his current position was "pending" until June 30, 2008. (Doc. 9-11). The significance of this email is not well explained by either party.

[4]The score report for these tests indicates that the Essay Rating section was not completed at that time.

8

that Plaintiff was employed through June 5, 2008, and that he was terminated due to his failure to meet the requirements for his teaching certificate. (Doc. 9-9).

B.

As noted above, insofar as the Complaint alleges an "interference" claim under the FMLA, Plaintiff now concedes that such claim is unsupported by the evidence and accordingly, the motion is granted in favor of the Defendant as to that aspect of the claim.

As for his retaliation claim, Plaintiff must show that Defendant intentionally discriminated against him in the form of an adverse employment action for having attempted to exercise his rights under the FMLA. *See Strickland*, 239 F.3d at 1207. To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Hurlbert,* 439 F.3d at 1297; *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004) (citing *Strickland*, 239 F.3d at 1207).[5]

Here, it is agreed that Plaintiff engaged in activity protected by the FMLA and that his termination was an adverse employment decision. Thus, the initial issue in dispute is whether Plaintiff's termination was causally related to his protected activity. To demonstrate a causal connection, the Plaintiff must show that his protected activity and his termination were not "wholly unrelated." *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.

---

[5]In the absence of direct evidence of the employer's intent, retaliation claims under the FMLA are subject to the same burden-shifting framework applicable to Title VII discrimination claims and set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001).

9

1985). "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) and *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)). And, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. *Brungart*, 231 F.3d at 799 (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000), and *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 934 (11th Cir. 1995)).

Here, there is no dispute that Defendant was fully aware of Plaintiff's use of FMLA leave when it terminated him. Defendant urges that despite this, the two events are unrelated because Plaintiff's failure to complete all the requirements for his teaching certificate prevents him from teaching in Florida. While this is true, given the required showing and the inference which arises from the close temporal proximity between Plaintiff's FMLA leave and his termination, I conclude Plaintiff establishes a *prima facie* case of FMLA retaliation.

Where the employee establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008) (quoting *Hurlbert*, 439 F.3d at 1297). "If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence 'sufficient to permit a

reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id*. (citing *Hurlbert*, 439 F.3d at 1298). Here, the Defendant maintains that even if Plaintiff can establish a prima facie case for retaliation, he cannot demonstrate that its stated reason for termination, that is, Plaintiff's failure to timely complete all the testing requirements for the Professional Educator's Certificate, was a pretext for retaliation.

Defendant articulates a legitimate, nondiscriminatory reason for declaring Plaintiff ineligible to continue in his position. Here, Plaintiff was teaching under a three-year Temporary Certificate that was set to expire June 30, 2008. Absent a valid teaching certificate, Plaintiff was ineligible to teach in Florida. Plaintiff does not dispute this nor the fact that he did not satisfy all test requirements by June 30, 2008. Thus, on its face, the determination that he was no longer eligible for employment appears nondiscriminatory and unrelated to his FMLA leave. In response, Plaintiff urges vaguely that Defendant's decision to terminate him was pretextual. Giving his argument the broadest of readings, Plaintiff contends that pretext is demonstrated by the fact that Defendant could have and should have given him an extension to complete his test requirements in light of his health circumstances[6] and because the June 5, 2008, deadline established by the Defendant was arbitrary and, in his

---

[6]It is wholly unclear that the extension Plaintiff claims he sought was a formal extension of his Temporary Certificate or merely an extension of the deadline to complete the tests. I suspect it was only the latter. There is little documentary support for this request. As noted above, after receiving the May 2, 2008, letter, Plaintiff claims vaguely to have made a number of telephone calls to Defendant and then to "Tallahassee" to arrange to take the tests. However, the Defendant's response raises issues related to the formal extension of the temporary certificate and thus it is addressed in some detail below.

11

special circumstances, unfair and punitive since the Initial Certification gave him until June 30, 2008, to complete all the requirements. Beyond these contentions, he offers his belief that the decisions are related to his FMLA leave.

The question of Plaintiff's eligibility to extend his Temporary Certificate is disputed. While it appears that Florida law allows for Temporary Certificates to be extended in limited circumstances, the evidence here reveals that Defendant did not seek an extension of the certificate for Plaintiff ostensibly because Plaintiff did not qualify.[7] Thus, while Plaintiff urges that his circumstances were extreme, extraordinary, and/or extenuating in contemplation of Florida law, Defendant maintains it could not seek an extension given that Plaintiff had not successfully passed all sections of the General Knowledge test at the time of his request, which it contends was required to be completed in the first year. *See* (Doc. 8 at 6); (Doc. 10 at 4). Here, Plaintiff appears to have the better argument.

---

[7]It is unclear whether the issue of not being able to request an extension was part of Defendant's decision-making at the time or whether this was an issue raised later by the pleadings. Defendant submits portions of the Bureau of Educator Certification Partnership Manual Fall 2009, which is intended to provide an explanation of current Laws and Rules governing eligibility for a Florida Educator Certificate. (Doc. 10-3). In pertinent part, the Manual provides that the Commissioner of Education may authorize an extension of a Three-Year Temporary Certificate, but only "on a very limited basis and *only* when all of the following conditions set forth in the statute are met:
   1. The individual must have experienced *extreme, extraordinary, extenuating* circumstances beyond his/her control that prevented the requirements for the Professional Certificate from being completed.
   2. The individual must have met requirements for demonstration of mastery of general knowledge in full.
   3. The superintendent must request the extension from the Commissioner of Education, who must approve the extension.   Supporting documentation must be submitted with the request. . . ." *Id.* at 5 (emphasis in original); *see also* § 1012.56(6), Fla. Stat. (2006).

Florida law provides that "[e]ach person employed or occupying a position as school supervisor, school principal, teacher, . . ., or other position in which the employee serves in an instructional capacity, in any public school of any district of this state shall hold the certificate required by law and by rules of the State Board of Education in fulfilling the requirements of the law for the type of service rendered." § 1012.55, Fla. Stat. (2004). Section 1012.56 sets forth the educator certification requirements in Florida.[8] A temporary certificate which is valid for three school fiscal years may be issued if an applicant satisfies the requirements outlined in § 1012.56(2)(a) - (f) and completes certain other requirements. Thus, at issue was Plaintiff's satisfactory completion of requirements (2)(g), (2)(h), and 2(i) prior to expiration of the temporary certificate.

---

[8]In pertinent part, to be eligible to seek certification, an individual must:

(a) Be at least 18 years of age.
(b) File an affidavit that the applicant subscribes to and will uphold the principles incorporated in the Constitution of the United States and the Constitution of the State of Florida and that the information provided in the application is true, accurate, and complete. . . .
(c) Document receipt of a bachelor's or higher degree from an accredited institution of higher learning, or a nonaccredited institution of higher learning that the Department of Education has identified as having a quality program resulting in a bachelor's degree, or higher. . . .
(d) Submit to background screening in accordance with subsection (9). . . .
(e) Be of good moral character.
(f) Be competent and capable of performing the duties, functions, and responsibilities of an educator.
(g) Demonstrate mastery of general knowledge, pursuant to subsection (3).
(h) Demonstrate mastery of subject area knowledge, pursuant to subsection (4).
(i) Demonstrate mastery of professional preparation and education competence, pursuant to subsection (5).

§ 1012.56(2), Fla. Stat. (2006).

Under Florida law, the requirements of (2)(g) (mastery of general knowledge) must be met within one calendar year of the date of employment under the temporary certificate. *See* § 1012.56(6), Fla. Stat. (2006). According to the statute, acceptable means of demonstrating mastery of general knowledge as required by (2)(g), are as follows:

> (a) Achievement of passing scores on basic skills examination required by state board rule;
> (b) Achievement of passing scores on the College Level Academic Skills Test earned prior to July 1, 2002;
> (c) A valid professional standard teaching certificate issued by another state;
> (d) A valid certificate issued by the National Board for Professional Teaching Standards or a national educator credentialing board approved by the State Board of Education; or
> (e) Documentation of two semesters of successful teaching in a community college, state university, or private college or university that awards an associate or higher degree and is an accredited institution or an institution of higher education identified by the Department of Education as having a quality program.

§ 1012.56(3), Fla. Stat. (2006). By Plaintiff's deposition testimony, he possessed two other valid teaching certificates, one from the state of Texas and the other from the Department of Defense school system. (Doc. 9 at 23). According to Plaintiff, it was based on these two certificates that he received his temporary certificate to begin with. Thus, to the extent that Plaintiff possessed a valid professional standard teaching certificate issued by another state as he testified, it appears that the (2)(g) requirements of the "mastery of general knowledge" were satisfied. If so, Defendant's conclusion that it could not request an extension given Plaintiff's failure to satisfy the mastery of general knowledge within one year would not be accurate. Notwithstanding, this is not enough to establish pretext in these circumstances.

To avoid summary judgment Plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. County*

*Comm'n of Jefferson County, Ala.,* 446 F.3d 1160, 1163 (11th Cir. 2006).  And "[a] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).  Neither is demonstrated by the Plaintiff.

      Plaintiff urges that the Defendant should have allowed him until June 30, 2008, to complete the testing and had that been permitted, he could have satisfied all the requirements.  By his argument, the imposition of the June 5, 2008, deadline was punitive and deprived him of a fair chance to succeed on the tests.  It is his belief that Defendant's insistence on the June 5, 2008, deadline was prompted because of his FMLA leave (or perhaps his unrelated grievance or perhaps for some other reason).  Even in a light favorable to Plaintiff, the undisputed facts belie these contentions.  First, while Defendant did advance its own deadline for submitting evidence of its teachers' completion of the required tests, such deadline was uniformly established and applied.  Stated otherwise, there is no showing that Plaintiff was singled out for different treatment.  Nor does he demonstrate that this deadline was imposed as a punitive measure or that it was in any way related to his FMLA leave.  Second, the hard truth is that Defendant is not to blame for the failure of Plaintiff to timely complete the required tests either before the date set by Defendant or on or before June 30, 2008, when his certificate expired.  That he was required to schedule and take the tests on an expedited basis; that one of the tests was only offered quarterly; and the fact that he failed one of the tests, were not the fault of the Defendant and more to the point, are not demonstrated to reveal pretext in the stated reason for his termination.  He lost his position with the Defendant school

15

board after June 5, 2008, and he was ineligible to teach anywhere in Florida after June 30, 2008, until he completed all the tests. Plaintiff's suspicion or earnest belief that Defendant acted as it did because of his FMLA leave is no substitute for actual evidence of that fact. While "[a] plaintiff may point to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's proffered reason[,] . . . a plaintiff cannot merely quarrel with the wisdom of the employer's reason, but 'must meet the reason head on and rebut it.'" *Diaz v. TransAtlantic Bank*, No. 09-13150, 2010 WL 653331, at *3 (11th Cir. Feb. 24, 2010) (citing *Brooks*, 446 F.3d at 1163, and *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Plaintiff fails to offer significantly probative evidence to establish pretext here. *See Brooks*, 446 F.3d at 1163.

In conclusion, I am obliged to conclude that Plaintiff fails to create even a question of fact on the issue of pretext. Plaintiff's nonrenewable Temporary Certificate expired June 30, 2008. He failed to satisfy the requirements for his Professional Educator's Certificate by that date. Thereafter, until such were satisfied, he was ineligible to teach in Florida. His claim that had he been given until the later date to complete the tests, he would have satisfied all the requirements is contradicted by the facts and his concession that after he learned he had failed one test on June 4, 2008, he did not even attempt to do so. Even if it is assumed that the June 5, 2008, deadline was arbitrarily imposed by Defendant, on the proffered evidence, it was nonetheless uniformly imposed and applied. *See* (Doc. 10 at 2-3). Most significantly, Plaintiff can offer nothing but his unsubstantiated belief and opinion that this deadline and the

refusal of the Defendant to extend the deadline were related to his FMLA leave or that the Defendant's stated reason for termination was false.

IV.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 8) is **granted**. The Clerk is directed to enter judgment in favor of the Defendant with each side to bear their own fees and costs. The Clerk is directed to thereafter close the case.

**Done and Ordered** in Tampa Florida this 15th day of June 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record